UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK ADAMS,

      Plaintiff,

      v.

VIVO INC and Genomic Health, Inc.,

      Defendants.
_____/

No. C 12-01854 DMR

**ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**

    Defendant Vivo, Inc. ("Vivo") moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike portions of the complaint pursuant to Federal Rule of Civil Procedure 12(f). [Docket No. 6]. Defendant Genomic Health, Inc. ("GHI") joined in the motion. [Docket. No. 14]. The court held a hearing on July 26, 2012, at which Plaintiff Mark Letell Adams ("Adams") appeared *pro se* and counsel appeared on behalf of Defendants.

    As an initial matter, Adams's first motion to file a late opposition brief is granted. [Docket No. 23]. Adams's second motion to file an opposition is denied as moot in light of the earlier filed opposition. [Docket No. 35].

    Having reviewed the relevant legal authority, and the papers and argument of the parties, the court GRANTS IN PART Defendants' motion to dismiss with leave to amend, and DENIES AS MOOT the motion to strike for the reasons set forth below.

\\

# I. BACKGROUND

Adams makes the following allegations in his complaint, all of which are taken as true solely for purposes of this motion.[1] On or about November 8, 2011, Vivo, a placement agency, arranged an interview for Adams with five employees and managers of GHI for a contract position as "Project Manager, Web Properties." Compl. ¶ 10. Adams declined to pursue the position offered by GHI hiring manager, David Lebsack, because Adams perceived that Lebsack had an "adversarial (discriminatory) demeanor." *Id*.

On or about November 23, 2011, Adams applied online with GHI for an open full-time position as "Information Technology, Infrastructure Services Operations Manager," and reapplied for the Project Manager, Web Properties position. Compl. ¶ 10. On or about January 13, 2012, Vivo contacted Adams regarding a one-month contract as Project Manager for GHI. Compl. ¶ 11. On January 14, 2012, Adams signed an employment contract with Vivo to work at GHI, which Vivo signed on January 16, 2012. Compl. ¶ 11. The contract provides in part as follows:

> . . . this Temporary Employment Agreement will begin on <u>January 18, 2012</u> ("start date") and end on <u>February 29, 2012</u> ("expiration date"). If upon the expiration date, circumstances warrant extending Temporary Employee's contract term, Company will provide Temporary Employee with a written offer to extend this Agreement within 10 days of said expiration date. If no such offer is extended, this Agreement is deemed terminated upon the above expiration date.

Defs' RJN, Ex. 1 ¶ 1.[2]

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

[2] A court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) It is thus appropriate for the court to consider Adams' employment contract, since it is the subject of the allegations in his complaint, and the parties do not contest its authenticity. However, the court denies Adams's request for judicial notice of emails and procedures that have not yet been properly authenticated.

1    According to Adams, GHI's Information Technology group had a hostile environment that
2 tolerated verbal altercations at meetings or on projects. Compl. ¶¶ 12-16, 20-22, 24, 26. Adams
3 informed his supervisor about the hostile communications either by email or verbally. Compl. ¶ 15.
4    From February 13 to February 24, 2012, Adams considered other potential job opportunities
5 but decided to stay with GHI after being told by Vivo that his contract was going to be extended by
6 GHI for six months, and that permanent placement was likely. Compl. ¶ 23. On February 21, 2012,
7 Adams's direct supervisor, Mark Schroeder, told Adams that GHI had sought a six month extension
8 and would begin a background check to initiate the permanent hiring process. Compl. ¶ 32.
9    From the evening of February 23 to the early morning of February 24, 2012, Adams sent
10 emails to Schroeder and GHI's Director of Engineering, Wilson Hung, with concerns about the work
11 on "Comstrat" by GHI's Associate Director of Engineering, Iltcho Kerlesky. Compl. ¶ 36. Adams
12 met with Hung and Kerlesky on February 24, 2012, to discuss certain concerns. Compl. ¶ 36. On
13 February 25, 2012, Adams printed out several emails about the Comstrat controversy and noticed
14 that an email had been erased. Compl. ¶ 39. On February 27, 2012, Adams complained to Lebsack
15 about Kerlesky's "antagonistic behavior." Compl. ¶ 41. On February 29, 2012, Adams met with
16 Vivo about his employment contract with GHI; the Vivo representative did not discuss poor work
17 performance or otherwise give any indication that Adams may be terminated by GHI. Compl. ¶ 42.
18    On March 1, 2012, Adams had a disagreement with Kerlesky and was later confronted by
19 Lebsack, who accused Adams of "creating a 'verbal altercation' with Kerlesky." Compl. ¶ 25.
20 According to Adams, Lebsack constructively discharged him or terminated his employment contract
21 on March 1, 2012. *Id.*
22    Adams filed a complaint on April 13, 2012 alleging the following causes of action under
23 Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 et seq., against GHI and Vivo Inc.:
24 1) race discrimination and disparate treatment in the refusal to hire; 2) harassment based on race; 3)
25 constructive discharge; 4) unlawful discrimination based on race; and 5) unlawful discrimination
26 based on retaliation. Defendants move to dismiss all the claims of the complaint for failure to state a
27 claim. Defendants further move to strike portions of the prayer for relief.
28

3

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson,* 551 U.S. at 94, and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks omitted). When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citation omitted). Pleadings by *pro se* litigants are to be construed liberally. *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

"[A] court may take judicial notice of 'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch,* 14 F.3d at 454. "The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1363 (3d ed. 2004). "[I]n dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation and quotation marks omitted).

4

### B. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), upon motion or *sua sponte*, a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that will arise from litigating spurious issues by dispensing with those issues prior to trial. *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) (motions to strike are proper if striking part of a pleading would make trial less complicated or otherwise streamline the ultimate resolution of the action). Rule 12(f) motions should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *Rosales v.* Citibank, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)*; Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). A decision to strike material from the pleadings is vested to the sound discretion of the trial court. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).

### III. DISCUSSION

### A. Race Discrimination

Adams, an African-American, (Compl. ¶ 28), claims that he suffered race discrimination in violation of Title VII. *See* 42 U.S.C. § 2000e–2(a)(1) (prohibiting an employer from failing or refusing to hire or otherwise discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national orientation"); 42 U.S.C. § 2000e-2(b) ("It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin."). The complaint asserts three theories of race discrimination: disparate treatment, disparate impact, and harassment or hostile work environment.

### 1. Disparate Treatment

The elements of a prima facie discrimination case require that: (1) plaintiff is a member of a protected class; (2) plaintiff performed his or her job satisfactorily; (3) plaintiff suffered an adverse

employment action; and (4) plaintiff was treated less favorably than a similarly situated, non-protected employee. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff in a Title VII employment discrimination case must comport with the pleading requirements of Federal Rule of Civil Procedure 8 to state a plausible claim under *Iqbal*; however, the plaintiff need not prove his prima facie discrimination case at the pleading stage. *See Kuang–Bao OuYoung v. Potter*, 2011 WL 9113 *2 (N.D. Cal. Jan. 3, 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

Adams claims that he suffered intentional race discrimination when he was terminated, or failed to receive an extension of his employment contract. In support of this claim, he alleges that he did not receive the contract extension because he had a verbal altercation with Kerlesky, while white employees who had verbal altercations with Kerlesky or with Adams were not fired. He also alleges that an African American female employee ("Claudia") was subjected to discrimination and unfair business practices by GHI. Compl. ¶¶ 16, 26, 52, 53. As currently pled, the allegations of the complaint are too vague to support a causal connection that the adverse employment action was "because of [his] race." 42 U.S.C. § 2000e–2(a)(1). The complaint does not provide any information about the verbal altercations -- for example, who and what they involved, and whether the incidents were in any way similar to Adams's situation. The complaint is also devoid of details about the African American female employee, such as when she was employed by GHI and in what capacity, and the nature of the alleged discrimination and unfair business practices that she suffered. The complaint thus lacks facial plausibility because it does not contain factual allegations from which a reasonable inference can be drawn that Defendants engaged in race discrimination. Furthermore, the allegations do not sufficiently differentiate the claims and theories of liability that are alleged against GHI from the claims against Vivo. The court therefore dismisses the disparate treatment claim with leave to amend.

### 2. Disparate Impact

Adams also asserts a claim for disparate impact discrimination. *See* 42 U.S.C. § 2000e–2(k)(1)(A)(i). "A claim of disparate impact challenges 'employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group

than another and cannot be justified by business necessity.'" *Stout v. Potter,* 276 F.3d 1118, 1121 (9th Cir. 2002) (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *see also* 42 U.S.C. § 2000e-2(k)(1)(A)(i). "A plaintiff establishes a prima facie case of disparate impact by showing a significant disparate impact on a protected class caused by a specific, identified, employment practice or selection criterion." *Stout*, 276 F.3d at 1121 (citation omitted). For disparate impact claims, "[i]llicit motive or intent is irrelevant because impact analysis is designed to implement Congressional concern with the consequences of employment practices, not simply the motivation. [Citations omitted.] Rather, the focus in a disparate impact case is usually on statistical disparities, rather than specific incidents, and on competing explanations for those disparities." *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990) (citations and quotation marks omitted).

The complaint alleges that Defendants GHI and Vivo "have a policy, practice, custom, and usage of requiring applicants for employment to disclose whether they have ever been arrested for and/or convicted of a crime." Compl. ¶ 54. Adams alleges that Defendants discriminated against him by inquiring about his arrest record where he had been detained but not convicted of or charged with a crime. Compl. ¶ 56. Adams alleges that GHI's policy in refusing to hire any individual who has been arrested and/or convicted of a crime other than a minor traffic violation has "a greater adverse consequence and effect on African Americans seeking employment than on whites since a disproportionately greater percentage of African Americans are arrested and convicted of a criminal offense than are whites." Compl. ¶ 58. The allegations of the complaint do not sufficiently allege the existence of a policy by Vivo, as distinct from GHI, and do not sufficiently allege a disparity to show that the consequences of the challenged policy "in fact fall more harshly on one group than another in support of his disparate impact claim." *Stout*, 276 F.3d at 1121 (citation and quotation marks omitted). The claim is therefore dismissed with leave to amend.

### 3. Hostile Work Environment

Adams also claims that GHI maintained a racially hostile work environment in violation of Title VII. To prevail on a hostile work environment claim under Title VII, a plaintiff must show (1) that he was subjected to verbal or physical conduct because of race, (2) the conduct was unwelcome,

and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 872 n.4 (9th Cir. 2001). To be actionable, the racial harassment must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" in light of all the circumstances. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112-13 (9th Cir. 2004) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). "To determine whether conduct was sufficiently severe or pervasive to warrant liability, courts look at all the circumstances including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Lelaind v. City and County of San Francisco*, 576 F. Supp. 2d 1079, 1101 (N.D. Cal. 2008) (citing *Nichols*, 256 F.3d at 872). Furthermore, the working environment must be both objectively and subjectively offensive, as perceived by a reasonable similarly situated person and as perceived by the plaintiff himself. *Id*.

Adams makes certain allegations regarding his constructive discharge claim that may bear on his racially hostile work environment claim. As previously noted, the court must give a liberal construction to pleadings by *pro se* litigants. Seen in its most favorable light, the complaint alleges that the hostile environment at GHI was generated by "unfounded complaints" about Adams' work by senior managers; his heavy work assignments "which amounted to a 10:1 ratio greater than similarly situated white co-workers;" work assignments that were "menial [and] demeaning" such as "setting up meetings for managers who could be better served to do the task themselves;" and "repeated racial insults and slurs concerning me while in my presence by individual [GHI] employees," such as joking about Adams "having an aversion to police officers." Compl. ¶ 76. While the claim would certainly benefit from more detailed allegations, it is sufficiently pled for purposes of surviving a Rule 12(b)(6) challenge. Defendants' motion to dismiss the racially hostile work environment claim is therefore denied.

### B. Constructive Discharge

Adams claims that he was constructively discharged because of his race in violation of Title VII. To establish constructive discharge, a plaintiff "must show that the abusive working

environment became so intolerable that [his] resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004). As pled, the complaint does not allege that Adams resigned from employment, nor does it have sufficient factual content to otherwise support a claim for constructive discharge. The claim is therefore dismissed with leave to amend.

**C.     Retaliation**

Adams alleges that Defendants retaliated against him for opposing illegal practices and for notifying Defendants that he would file a complaint with the EEOC alleging discrimination. *See* 42 U.S.C. § 2000e–3(a) (providing that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title [42 U.S.C. §§ 2000e to 2000e–17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title").

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity; (2) subsequently, he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *See Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004); *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994). Protected activities include: (1) opposing any practice made an unlawful employment practice by Title VII; and (2) participating in a statutorily authorized proceeding. *Thomas*, 379 F.3d at 811; *E.E.O.C. v. Luce, Forward, Hamilton & Scripps,* 303 F.3d 994, 1005 (9th Cir. 2002). Defendants correctly argue that Adams must show that there is a causal connection between the protected activity and the adverse employment action in order for there to be a viable claim for retaliation.

Title VII's statutory "opposition clause" prohibits an employer from retaliating against an applicant or employee "because he has opposed any practice made an unlawful employment practice [by Title VII]." *Luce*, 303 F.3d at 1005 (citing 42 U.S.C. § 2000e-3(a)). Adams alleges that he filed an EEOC complaint of race discrimination and retaliation on March 2, 2012, (after the expiration date noted on the face of the employment agreement). On its face, the complaint demonstrates that no causal connection exists between Adams filing his EEOC complaint and his termination or failure

to receive the contract extension, because the filing occurred *after* the adverse action.  Compl. ¶¶ 9, 87.  Therefore, the claim is dismissed.  As currently pled, the complaint does not address whether Adams notified Defendants of his intent to file an EEOC complaint before the end of employment, or otherwise opposed a practice made unlawful by Title VII.  For this reason, the court grants leave to amend.

Adams also claims that Defendants retaliated against him for complaining about Kerlesky's negligence in handling a statement of work and failing to attend crucial project meetings.  Compl. ¶ 36.  This does not amount to opposing a practice made unlawful by Title VII.  Adams's allegation that he suffered retaliation after complaining to a co-worker about potential email tampering fails for the same reasons.

Title VII also protects employees against retaliation because that person "has made a charge, testified, assisted, or participated in any manner in a . . . proceeding." *Luce*, 303 F.3d at 1006 (citing 42 U.S.C. § 2000e-3(a)).  A "proceeding" covered by Title VII "undoubtedly includes instituting 'a civil action . . . in a court of competent jurisdiction.'" *Id*. (citing 42 U.S.C. §§ 2000e-5(f)(1), (3)).  Adams does not allege that he was participating in, or informed GHI or Vivo of his intention to participate in, a statutorily authorized proceeding to support a retaliation claim under Title VII's participation clause.  *Id*.

Because the complaint does not sufficiently allege that Adams opposed unlawful employment discrimination or participated in a proceeding protected by Title VII, or that there is a causal link between such protected activity and the adverse employment action, the fifth claim for relief for retaliation is dismissed with leave to amend.  In amending the complaint, Adams must distinguish his retaliation claim against GHI from his claim against Vivo.

### D.     Motion to Strike

Defendants move to strike the prayer for relief which seeks a permanent injunction and a cease and desist order because Adams has alleged only past violations of Title VII and does not assert any likelihood that he will be subjected to future similar violations and therefore lacks standing to seek injunctive relief against Defendants.  Defendants also challenge the prayer for overtime compensation and employee expense reimbursement on the grounds that the complaint

does not allege a basis for recovery of overtime or expenses. Defendants further move to strike the words "Declaratory Relief and" from the caption of the complaint. Because the complaint is dismissed with leave to amend, the motion to strike is DENIED as moot.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART WITH LEAVE TO AMEND. Defendants' motion to dismiss Adams's claim for a racially hostile work environment is DENIED. Defendants' motion to strike is DENIED AS MOOT. Any amendment offered by Adams must also clarify whether a particular claim is asserted against Defendant GHI or Defendant Vivo, or both. Adams may not add new parties but must file an amended complaint in accordance with this order by August 16, 2012.

IT IS SO ORDERED.

Dated: August 3, 2012

DONNA M. RYU
United States Magistrate Judge