UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK ADAMS,                                    No. C 12-01854 DMR

        Plaintiff,                          **ORDER ON DEFENDANTS' MOTION
                                               TO DISMISS AMENDED COMPLAINT
    v.                                      AND DENYING MOTION TO STRIKE**

VIVO INC and Genomic Health, Inc.,

        Defendants.

_____/

      Defendants Vivo, Inc. ("Vivo") and Genomic Health, Inc. ("GHI") move the court pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) to dismiss *pro se* Plaintiff Mark Letell Adams' amended complaint and to strike portions of the amended complaint. [Docket No. 49.] A hearing on the motion was scheduled for October 25, 2012. Adams failed to appear and the court subsequently issued an order to show cause why he should not be sanctioned. [Docket No. 55.] Adams timely responded and on October 29, 2012, the court discharged the order to show cause and scheduled a hearing. [Docket No. 58.] The court held a hearing on November 8, 2012, at which Adams appeared and counsel appeared on behalf of Defendants.

      Having reviewed the relevant legal authority, and the papers and argument of the parties, the court GRANTS IN PART Defendants' motion to dismiss Adams' amended complaint with leave to amend and DENIES the motion to strike for the reasons set forth below.

# I. BACKGROUND

Adams makes the following allegations in his amended complaint, all of which are taken as true solely for purposes of this motion.[1]  On or about November 8, 2011, Vivo, a placement agency, arranged an interview for Adams with five employees and managers of GHI for a contract position as "Project Manager, Web Properties."  (Am. Compl. ¶ 10.)  Adams declined to pursue the position offered by GHI hiring manager David Lebsack because Adams perceived that Lebsack had an "adversarial (discriminatory) demeanor."  (Am. Compl. ¶ 10.)

Thereafter, on or about November 23, 2011, Adams applied online with GHI for an open full-time position as "Information Technology, Infrastructure Services Operations Manager," and reapplied for the Project Manager, Web Properties position.  (Am. Compl. ¶ 10.)  On or about January 13, 2012, Vivo contacted Adams regarding a one-month contract as Project Manager for GHI.  (Am. Compl. ¶ 11.)  On January 14, 2012, Adams signed a temporary employment contract with Vivo to work at GHI, which Vivo signed on January 16, 2012.  (Am. Compl. ¶ 11.)  The contract provides in part as follows:

> . . . this Temporary Employment Agreement will begin on <u>January 18, 2012</u> ("start date") and end on <u>February 29, 2012</u> ("expiration date").  If upon the expiration date, circumstances warrant extending Temporary Employee's contract term, Company will provide Temporary Employee with a written offer to extend this Agreement within 10 days of said expiration date.  If no such offer is extended, this Agreement is deemed terminated upon the above expiration date.

(Def.'s Req. for Judicial Notice ("RJN"), Ex. 1 ¶ 1.[2])

According to Adams, GHI's Information Technology group had a hostile environment that tolerated verbal altercations and aggressive communication from engineers and managers

---

[1]  When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

[2]  A court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  It is thus appropriate for the court to consider Adams' employment contract, since it is the subject of the allegations in his complaint, and the parties do not contest its authenticity.

throughout the office and at meetings.  (Am. Compl. ¶¶ 12, 13, 18, 20, 30.)  For example, Adams witnessed a "White female manager named Sarah [Holt] being verbally aggressive with other GHI co-workers in a manner that could be described as a 'verbal altercation.'"  (Am. Compl. ¶ 13.) Although Adams does not aver that Holt was verbally aggressive with him, he cites this incident as an "example of discrimination against [Adams] that was not experienced by Caucasian or White GHI employees who are or were similarly situated."  (Am. Compl. ¶ 13.)  On February 17, 2012, Adams met with GHI managers and employees, including Holt, who again "communicated to [Adams] with hostility and animosity during the meeting in the furtherance of maintaining a hostile environment" around him.  (Am. Compl. ¶ 18.)  In mid-February, a "White female Project Manager named Peggy Johnston . . . who was a similarly situated contract employee for [GHI] initiated a 'verbal altercation' against" Adams.  (Am. Compl. ¶ 20.)  To the best of Adams' knowledge, Johnston "did not receive any discharge, termination or any type of formal reprimand," and in fact, Adams alleges that Johnston was promoted.  (Am. Compl. ¶¶ 20, 21.)  Adams documented the incident with Johnston in an email that he sent to his supervisor and two other employees, and in Johnston's own email reply to Adams and others, "she admitted being 'guilty as charged.'"  (Am. Compl. ¶ 20.)  Further, between January 18 and February 25, Adams documented and informed his supervisor, Mark Schroeder, about "harassment and hostility" against Adams each time it occurred. (Am. Compl. ¶ 14.)  Adams never "witnessed or experienced seeing any similarly situated Non-African American or White employees being terminated for a 'verbal altercation.'"  (Am. Compl. ¶ 12.)

As of February 21, 2012, during his last one-on-one meeting with his supervisor, Schroeder, Schroeder told Adams that his work was "great" and that GHI had sought a six month extension and would begin a background check to initiate the permanent hiring process.  (Am. Compl. ¶ 26.)  On February 29, 2012, Adams met with Vivo about his employment contract with GHI; the Vivo representative affirmed that GHI was working on a six month contract extension.  (Am. Compl. ¶ 26.)  At no time between February 21 and February 29 did anyone from Vivo or GHI complain about Adams' performance or provide him with written documentation of any "adversarial problems" with his communication to other employees.  (Am. Compl. ¶ 26.)  In fact, on February

1  23, 2012, Director of Engineering Wilson Hung and Schroeder told a group including Adams that

2  they were doing a "great job."  (Am. Compl. ¶ 27.)

3      On February 25, 2012, Adams met with Iltcho Kerlesky, GHI's Associate Director of

4  Engineering, to discuss "the hostile manner" in which Kerlesky was acting towards Adams.

5  Kerlesky informed Adams that he would not "work cooperately [sic]" with Adams because Adams

6  had challenged Kerlesky's story about who was to blame about a problem with a project.  (Am.

7  Compl. ¶ 29.)  On March 1, 2012, Adams had a disagreement with Kerlesky, and was later

8  confronted by Lebsack, who accused Adams of "creating a 'verbal altercation' with Kerlesky."

9  (Am. Compl. ¶ 19.)  Adams' employment contract was terminated on March 1, 2012.  (Am. Compl.

10  ¶¶ 1(l), 5.)

11      Adams filed a complaint on April 13, 2012 alleging the following five causes of action under

12  Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 *et seq*., against GHI and Vivo: 1)

13  race discrimination and disparate treatment in the refusal to hire; 2) harassment based on race; 3)

14  constructive discharge; 4) unlawful discrimination based on race; and 5) unlawful discrimination

15  based on retaliation.  Defendants Vivo and GHI moved to dismiss the complaint and to strike

16  portions of the complaint.  On August 3, 2012, the court denied the motion to dismiss with respect to

17  Adams' harassment claim, granted it with respect to the remaining claims and granted Adams leave

18  to amend.  [Docket No. 47 (Order on Defs.' Mot. to Dismiss).]  The court denied the motion to strike

19  as moot given that the complaint was dismissed with leave to amend.

20      On August 16, 2012, Adams filed his amended complaint.  [Docket No. 48.]  In his amended

21  complaint, Adams alleges the following four causes of action under Title VII: 1) race discrimination

22  and disparate treatment in the refusal to hire; 2) harassment based on race; 3) unlawful

23  discrimination based on race; and 4) unlawful discrimination based on retaliation.[3]  Defendants

24  move to dismiss all the claims of the complaint for failure to state a claim, and again move to strike

25  portions of the prayer for relief.

26                    **II.  LEGAL STANDARDS**

27  _____

28      [3] Adams appears to have abandoned his constructive discharge claim.

1     **A.**     **Motion to Dismiss**

2         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

3 sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d

4 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the

5 court must "accept as true all of the factual allegations contained in the complaint," *Erickson,* 551

6 U.S. at 94, and may dismiss the case "only where there is no cognizable legal theory or an absence

7 of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless*

8 *Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks omitted). When a

9 complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks

10 "sufficient factual matter to state a facially plausible claim to relief." *Id.* (citing *Ashcroft v. Iqbal*,

11 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). A claim has facial plausibility when a plaintiff "pleads

12 factual content that allows the court to draw the reasonable inference that the defendant is liable for

13 the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Pleadings by *pro se* litigants are

14 to be construed liberally. *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

15         "[A] court may take judicial notice of 'matters of public record,'" *Lee v. City of Los Angeles*,

16 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th

17 Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose

18 authenticity no party questions, but which are not physically attached to the pleading" without

19 converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v.*

20 *Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa*

21 *Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict

22 facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385,

23 1388 (9th Cir. 1987).

24     **B.**     **Motion to Strike**

25         Pursuant to Federal Rule of Civil Procedure 12(f), upon motion or *sua sponte*, a court may

26 strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or

27 scandalous matter." The function of a Rule 12(f) motion to strike is to avoid the expenditure of time

28 and money that will arise from litigating spurious issues by dispensing with those issues prior to

1  trial.  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) (motions to strike are

2  proper if striking part of a pleading would make trial less complicated or otherwise streamline the

3  ultimate resolution of the action).  Rule 12(f) motions should not be granted unless it is clear that the

4  matter to be stricken could have no possible bearing on the subject matter of the litigation.  *Rosales*

5  *v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001); *Colaprico v. Sun Microsystems, Inc*., 758

6  F. Supp. 1335, 1339 (N.D. Cal. 1991).  A decision to strike material from the pleadings is vested to

7  the sound discretion of the trial court.  *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).

8  ### III. DISCUSSION

9  **A.    Race Discrimination**

10  Adams, who is African-American and Native American, (Am. Compl. ¶ 3), claims that he

11  suffered race discrimination in violation of Title VII.  *See* 42 U.S.C. § 2000e–2(a)(1) (prohibiting an

12  employer from failing or refusing to hire or otherwise discriminating "against any individual with

13  respect to his compensation, terms, conditions, or privileges of employment, because of such

14  individual's race, color, religion, sex, or national orientation"); 42 U.S.C. § 2000e-2(b) ("It shall be

15  an unlawful employment practice for an employment agency to fail or refuse to refer for

16  employment, or otherwise to discriminate against, any individual because of his race, color, religion,

17  sex, or national origin, or to classify or refer for employment any individual on the basis of his race,

18  color, religion, sex, or national origin.").  The complaint asserts three theories of race

19  discrimination: disparate treatment, disparate impact, and harassment or hostile work environment.

20  **1.    Disparate Treatment**

21  The elements of a prima facie discrimination case require that: (1) plaintiff is a member of a

22  protected class; (2) plaintiff performed his or her job satisfactorily; (3) plaintiff suffered an adverse

23  employment action; and (4) plaintiff was treated less favorably than a similarly situated,

24  non-protected employee. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  A

25  plaintiff in a Title VII employment discrimination case must comport with the pleading requirements

26  of Federal Rule of Civil Procedure 8 to state a plausible claim under *Iqbal*; however, the plaintiff

27  need not prove his prima facie discrimination case at the pleading stage.  *See Kuang–Bao OuYoung*

28

1  *v. Potter*, No. C 10-0464 RS, 2011 WL 9113, at *2 (N.D. Cal. Jan. 3, 2011) (citing *Swierkiewicz v.*
2  *Sorema N.A.*, 534 U.S. 506, 512 (2002)).

3        Adams claims that he suffered intentional race discrimination when he failed to receive an
4  extension of his employment contract.  In support of this claim, he alleges that he did not receive the
5  contract extension because he had a verbal altercation with Kerlesky, while white employees who
6  had verbal altercations with Adams or other GHI workers were not fired.  (Am. Compl. ¶¶ 12, 13,
7  19, 20, 21, 25, 29, 30.)  As with Adams' original complaint, the amended complaint does not
8  provide any information about the verbal altercations – for example, who and what they involved,
9  and whether the incidents were in any way similar to Adams' situation – such that an inference of
10  race discrimination would be plausible.  The only other allegation Adams makes to support his
11  disparate treatment claim is that GHI has a history of discrimination against African Americans.
12  (Am. Compl. ¶¶ 38, 39.)  However, the only information he provides to support this conclusory
13  statement is the example of an African American female employee, "Claudia," who allegedly was
14  subjected to discrimination and "unfair business practices" by GHI.  (Am. Compl. ¶ 39.)  Adams
15  provides no details, such as when she was employed by GHI and in what capacity, and the nature of
16  the alleged discrimination and unfair business practices that she allegedly suffered.  As such, it is
17  entirely possible that this allegation amounts to nothing more than unsupported rumor regarding
18  events in the distant past.  Certainly, Adams does not allege that he has any personal knowledge
19  regarding this employee's circumstances.  The amended complaint is devoid of any further details
20  about GHI's alleged "history of discrimination."  The court pointed this out to Adams in the hearing,
21  and he was unable to provide anything further beyond the bare conclusion about the "history of
22  discrimination."

23        In sum, the only information in Adams' amended complaint to support this claim are the
24  allegations of differential treatment of white employees with respect to verbal altercations and the
25  conclusory statement that GHI has a history of discrimination.  The court previously found that this
26  claim lacked facial plausibility because the complaint did not contain factual allegations from which
27  a reasonable inference could be drawn that Defendants engaged in race discrimination.  Adams was
28  granted leave to amend his complaint to add such facts, but the amended complaint contains no new

factual allegations that support an inference of race discrimination, other than the statement about

GHI's history of discrimination against African Americans.  *See Epstein v. Wash. Energy Co.*, 83

F.3d 1136, 1140 (9th Cir. 1996) ("conclusory allegations of law and unwarranted inferences" are

insufficient to defeat a motion to dismiss).  As currently pled, the allegations of the complaint are

still too vague to support a causal connection that the adverse employment action was "because of

[his] race."  42 U.S.C. § 2000e–2(a)(1).  Further, the allegations still do not sufficiently differentiate

the claims and theories of liability that are alleged against GHI from the claims against Vivo.

Accordingly, the court dismisses this claim, but grants Adams one more opportunity to amend the

claim.  In his original complaint, Adams had alleged that he had experienced "repeated racial insults

and slurs concerning [him] while in [his] presence by individual [GHI] employees," citing as

examples Craig Guinasso and Chris Howard.  (Compl. ¶ 76.)  As discussed below, Adams

mistakenly omitted this allegation from his amended complaint.  It is not clear whether this

allegation supports Adams' claim of intentional race discrimination, as Adams did not provide any

information about Guinasso's and Howard's positions at GHI, such as whether they were his

coworkers or supervisors/decisionmakers.  It is also unclear whether Guinasso and Howard alone

made racial insults and slurs, or whether others, including supervisors and/or decisionmakers, did so

as well.  Therefore, the court grants Adams leave to amend to add any facts about the alleged racial

insults and slurs that would support his claim of disparate treatment based on race.

## 2. Disparate Impact

Adams also asserts a claim for disparate impact discrimination.  *See* 42 U.S.C.

§ 2000e–2(k)(1)(A)(i).  "A claim of disparate impact challenges 'employment practices that are

facially neutral in their treatment of different groups but that in fact fall more harshly on one group

than another and cannot be justified by business necessity.'"  *Stout v. Potter,* 276 F.3d 1118, 1121

(9th Cir. 2002) (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15

(1977); *see also* 42 U.S.C. § 2000e-2(k)(1)(A)(i).  "A plaintiff establishes a prima facie case of

disparate impact by showing a significant disparate impact on a protected class caused by a specific,

identified, employment practice or selection criterion."  *Stout*, 276 F.3d at 1121 (citation omitted).

For disparate impact claims, "[i]llicit motive or intent is irrelevant because impact analysis is

designed to implement Congressional concern with the consequences of employment practices, not simply the motivation.  [Citations omitted.]  Rather, the focus in a disparate impact case is usually on statistical disparities, rather than specific incidents, and on competing explanations for those disparities."  *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990) (citations and quotation marks omitted).

   The complaint alleges that Defendants GHI and Vivo "have a policy, practice, custom, and usage of requiring applicants for employment to disclose whether they have ever been arrested for and/or convicted of a crime."  (Am. Compl. ¶ 41.)  Adams alleges that Defendants discriminated against him by inquiring about his arrest record where he had been detained but not convicted of or charged with a crime.  (Am. Compl. ¶ 43.)  Adams alleges that GHI's policy of refusing to hire any individual who has been arrested and/or convicted of a crime other than a minor traffic violation has "a greater adverse consequence and effect on African Americans seeking employment than on whites since a disproportionately greater percentage of African Americans are arrested and convicted of a criminal offense than are whites."  (Am. Compl. ¶ 45.)  The allegations of the amended complaint do not sufficiently allege the existence of a policy by Vivo, as distinct from GHI, and still do not sufficiently allege a disparity to show that the consequences of the challenged policy "in fact fall more harshly on one group than another" in support of his disparate impact claim. *Stout*, 276 F.3d at 1121 (citation and quotation marks omitted).  Adams was granted leave to amend this claim but the amended complaint suffers from the same pleading deficiencies with respect to his disparate impact claim.  The claim is therefore dismissed with prejudice.

### 3.   Hostile Work Environment/Harassment

   Adams also claims that GHI maintained a racially hostile work environment in violation of Title VII.  To prevail on a hostile work environment claim under Title VII, a plaintiff must show (1) that he was subjected to verbal or physical conduct because of race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment.  *Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 872 n.4 (9th Cir. 2001).  To be actionable, the racial harassment must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment,'" in light of all the circumstances.  *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112-13 (9th Cir. 2004) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).  "To determine whether conduct was sufficiently severe or pervasive to warrant liability, courts look at all the circumstances including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Leland v. City and County of San Francisco*, 576 F. Supp. 2d 1079, 1101 (N.D. Cal. 2008) (citing *Nichols*, 256 F.3d at 872).  Furthermore, the working environment must be both objectively and subjectively offensive, as perceived by a reasonable similarly situated person and as perceived by the plaintiff himself.  *Id.*

The court previously denied Defendants' motion to dismiss Adams' hostile work environment claim, finding that the claim was sufficiently pled for purposes of surviving a Rule 12(b)(6) challenge.  (Order on Defs.' Mot. to Dismiss 8.)  For reasons that are not entirely clear, Adams amended the claim.  Adams previously had alleged that the hostile environment was generated by, *inter alia*, "repeated racial insults and slurs concerning me while in my presence by individual [GHI] employees," such as joking about Adams "having an aversion to police officers." (Compl. ¶ 76.)  However, this and other allegations Adams originally pled in support of this claim do not appear in his amended complaint.  Adams now alleges that the hostile environment was created by "excessive criticism not otherwise accorded to white co-workers" and a "harassing" voicemail left for Adams by Holt "criticizing and assuming the purpose of [a] meeting" that Adams had set up "without taking the time to find out about the agenda beforehand."  (Am. Compl. ¶¶ 53, 54.)  In an introductory paragraph in his amended complaint, Adams also alleges that the racially motivated harassment included "racially derogatory remarks, retaliatory false accusations made against [him] by an associate director and impermissible disclosure of personal and confidential information," and that Defendants "levied an increased workload against [him] (e.g. 20 projects vs. 2 projects per similarly situated non-African American contract employees) without providing adequate staff assistance for such work."  (Am. Compl. ¶¶ 1(b), (i).)

At the hearing, in response to the court's questioning, Adams indicated that he had mistakenly omitted facts regarding racial slurs that were originally in his complaint and which

supported this claim from his amended complaint.  Accordingly, the court does not dismiss this claim, but does grant Adams leave to amend to add the facts that had supported the original claim.

## B.     Retaliation

Adams alleges that Defendants retaliated against him for opposing illegal practices and for notifying Defendants that he would file a complaint with the EEOC alleging discrimination.  *See* 42 U.S.C. § 2000e–3(a) (providing that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter [42 U.S.C. §§ 2000e to 2000e–17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter").

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity; (2) subsequently, he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action.  *See Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004); *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994). Protected activities include: (1) opposing any practice made an unlawful employment practice by Title VII; and (2) participating in a statutorily authorized proceeding.  *Thomas*, 379 F.3d at 811; *E.E.O.C. v. Luce, Forward, Hamilton & Scripps,* 303 F.3d 994, 1005 (9th Cir. 2002).  Adams must show that there is a causal connection between the protected activity and the adverse employment action in order for there to be a viable claim for retaliation.

Title VII's statutory "opposition clause" prohibits an employer from retaliating against an applicant or employee "because he has opposed any practice made an unlawful employment practice [by Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a); *see also Luce*, 303 F.3d at 1005.  Adams alleges that he filed an EEOC complaint of race discrimination and retaliation on March 2, 2012, after the February 29, 2012 expiration date noted on the face of the employment agreement.  (Am. Compl. ¶ 9.)  While the mere filing of his EEOC complaint, without more, would not demonstrate the requisite causal connection between the filing and the adverse employment action, because the filing occurred *after* the adverse action, Adams alleges that he

11

1   "openly stated in writing that [he] *would participate* in the EEOC process by filing a complaint."

2   (Am. Compl. ¶ 66) (emphasis added.)  However, the amended complaint is unclear as to whether he

3   made this announcement before the adverse action.  Similarly, Adams also alleges that Kerlesky and

4   Lebsack retaliated against him for participating in protected activity, including his "verbal and

5   written opposition, complaining about their unfair employment policies or practices."  (Am. Compl.

6   ¶ 16.)  While Adams alleges that these complaints took place prior to his March 2, 2012 EEOC

7   filing, again, it is unclear whether they took place before or after the adverse action.  (Am. Compl. ¶

8   16.)

9          Further, although Adams also alleges that between January 18 through February 25, he

10  "documented harassment and hostility against [Adams] from GHI employees and complained" to his

11  supervisor, Schroeder, each time it occurred (Am. Compl. ¶ 14), the substance of his complaints is

12  unknown.  For example, it is not clear from the amended complaint whether the instances of

13  "harassment and hostility" that he documented and complained about were racially-based incidents.

14         Because the complaint does not sufficiently allege that Adams opposed unlawful

15  employment discrimination and that there was a causal link between such protected activity and the

16  adverse employment action, the retaliation claim is dismissed.  At the hearing, Adams stated that

17  prior to the date of the adverse action, he had sent an email to Schroeder in which he specifically

18  complained about discrimination.  Accordingly, Adams is granted leave to amend this claim to add

19  facts regarding the timing and substance of his complaints.  Further, in previously granting Adams

20  leave to amend this claim, the court instructed Adams to distinguish his retaliation claim against

21  GHI from his claim against Vivo, but Adams has not done so.  (*See* Am. Compl. ¶ 16, "I allege that

22  [Kerlesky] and [Lebsack] of [GHI] including but not limited to [Vivo] retaliated against me . . .")  In

23  filing his second amended complaint, Adams must differentiate his retaliation claim against GHI

24  from the claim against Vivo.

25         **D.    Motion to Strike**

26         Defendants move to strike the prayer for relief which seeks a permanent injunction and a

27  cease and desist order because Adams has alleged only past violations of Title VII and does not

28  assert any likelihood that he will be subjected to future similar violations and therefore lacks

standing to seek injunctive relief against Defendants.  Defendants also move to strike the words "Declaratory Relief and" from the caption of the complaint, asserting that Adams is not entitled to declaratory relief as a matter of law.  Defendants further challenge the prayer for overtime compensation and employee expense reimbursement on the grounds that the complaint does not allege a basis for recovery of overtime or expenses.

Defendants do not allege that Adams' claims for injunctive and declaratory relief are "insufficient defense[s]" or are "redundant, immaterial, impertinent, or [a] scandalous matter."  Fed. Rule Civ. P. 12(f).  Nor could Defendants assert as much.  *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ("Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded . . . [i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question.") (internal quotation omitted); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (finding that a claim for damages could not be redundant, immaterial, impertinent or scandalous).  Instead, Defendants argue that injunctive and declaratory relief are precluded as a matter of law and therefore should be stricken from Adams' amended complaint.  However, the function of a motion to strike is to avoid the unnecessary expenditures that arise throughout litigation by dispensing of any spurious issues prior to trial.  *Sidney-Vinstein*, 697 F.2d at 885.  The function of Rule 12(f) is not served when a defendant attempts to strike a plaintiff's claim for certain types of relief, because it is "really an attempt to have certain portions of [the] complaint dismissed or obtain summary judgment against [the plaintiff] as to those portions of the suit."  *Whittlestone*, 618 F.3d at 974.  To allow litigants to use Rule 12(f) "as a means to dismiss some or all of a pleading . . . [would create] redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose."  *Id*. (*comparing Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977) ("Rule 12(f) is 'neither an authorized nor a proper way to procure the dismissal of all or part of a complaint) *with Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("The purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints . . . ")).  Rule 12(f) does not authorize a district court to

1   strike a claim for relief on the grounds that such relief is precluded as a matter of law.  *Jackson v.*

2   *Board of Equalization*, No. CIV S-09-1387 FCD DAD PS, 2011 WL 3814537, at *15 (E.D. Cal.

3   Aug. 26, 2011) (citing *Whittlestone*, 618 F.3d at 976).

4         Regarding Defendants' motion to strike Adams' request for overtime compensation and

5   expense reimbursement, it is unclear whether the request is part of Adams' request for front pay

6   damages.  If so, the motion is denied on the basis that the request is not an "insufficient defense" nor

7   "redundant, immaterial, impertinent, or scandalous matter."  Fed. Rule Civ. P. 12(f).  However, to

8   the extent the request forms the basis for a claim for recovery of overtime or expenses, the motion is

9   granted.  Given that Adams has not stated a basis for such claims, the court concludes such request

10  would be immaterial.

11                            **IV.  CONCLUSION**

12         For the foregoing reasons, Defendants' motion to dismiss Adams' amended complaint is

13  GRANTED IN PART WITH LEAVE TO AMEND.  Defendants' motion to strike is DENIED.

14

15         IT IS SO ORDERED.

16

17  Dated:  November 14, 2012

18                                        _____
                                          DONNA M. RYU
19                                        United States Magistrate Judge

20

21

22

23

24

25

26

27

28